JOAQUÍN RODRÍGUEZ RODRÍGUEZ, Plaintiff and Appellant, v. MARÍA CORTÉS MARRERO, Defendant and Appellee.

No. 8407. Argued March 13, 1942.—Decided March 16, 1942.

V. Polanco de Jesús for appellant, Luis Mercader for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for the collection of a debt secured by mortgage. The defendant admitted the existence of the debt sometime in the past, but filed in turn a cross complaint praying for a judgment directing the plaintiff to duly cancel the same. The court found for the defendant and the plaintiff appealed and has assigned three errors as having been committed by the trial court: (1) in weighing the evidence, (2) in rendering a judgment contrary to law and the evidence, and (3) in imposing costs on him.

The complaint was filed in March, 1935. It appears that two years afterward the clerk of the district court, on plain-

tiff's motion, entered a judgment by default adjudging the defendant to pay the sum of $450 claimed.

Thereupon the defendant moved to set aside the default and to vacate the judgment, and it was so ordered.

On May 3, 1937, the defendant filed her answer denying generally all the averments of the complaint. She also filed a cross complaint in which she alleged that at the time she was summoned she had already paid $23 on account of the mortgage claim, and that she called on the plaintiff and it was agreed that the latter would withdraw his action and the defendant would pay the balance of the debt amounting to $427 with the coffee harvested in the next crop from the mortgaged property; that she actually delivered to the plaintiff in coffee and cash the amount of her obligation; and that plaintiff has never given her a release nor has he canceled the mortgage notwithstanding her demand upon him to that effect.

The case went to trial. Both sides introduced evidence, and after weighing the same the district court made the following findings:

"From the evidence it appears that the defendant was doing business with plaintiff Joaquín Rodríguez on an open account, and it may be accepted as true that Joaquín Rodríguez had agreed with his brothers that the succession would be the real entity doing the business, although it was the plaintiff who had charge of everything and appeared as the responsible party to the persons with whom he dealt.

"It is, moreover, concluded that the loan giving rise to the deed, the subject matter of the suit, was, in contemplation of law, a different transaction from the crop-loan current account. However, both defendant María Cortés, when making payments on account, and plaintiff Joaquín Rodríguez, when accepting them, acted in such a confused way that it is difficult for the trial judge to fix definite limits enabling him to ascertain the true balance of the crop-loan current account.

In view of such a confusion, the judge sought to get from the plaintiff specific statements and put several questions to him, the

answers to which afford us a basis for a fair determination of the matter.

"In answer to questions propounded by the judge the plaintiff stated that there is a balance in favor of the defendant in her crop-loan current account amounting to $129.95; that said balance which she has failed to withdraw exists since the year 1935. The plaintiff further testified that at the time of the harvesting of the 1935 crop, the defendant did not owe anything on her current account; that in said year she delivered coffee valued at $183.37; and that in 1936 she delivered $63.20 worth of coffee.

"If the defendant did not owe anything on her crop-loan account in 1935, and there has been a balance in her favor amounting to $129.95 as from that date, then the value of the two coffee crops for the two years 1935 and 1936 should have been credited to her on the mortgage-loan account the subject matter of the complaint.

"When first questioned by the judge, the plaintiff said that he did not know what her purpose was in delivering on account the 1935 and 1936 crops, and when the judge later on asked him why he did not credit the above crops on her mortgage-loan account, he then tried to explain by saying that the defendant had bought other goods subsequent to the bringing of the action.

"In his evidence on rebuttal the plaintiff never denied that he had agreed to receive the 1935 and 1936 crops in satisfaction of his mortgage claim, despite the fact that defendant's son had testified regarding such an agreement.

"We are convinced that said agreement existed, not only because of the clear and sincere way in which defendant's son testified and because no evidence was introduced to overcome the statement as to the agreement, but also because of other facts which appear from the record of this case and which are as follows:

"The complaint was filed on March 18, 1935. Although the defendant was served with summons on the following day, the action was not further prosecuted and was dismissed for abandonment. This tends to corroborate the testimony of defendant's son to the effect that upon the complaint being filed, it was agreed to leave the matter pending so as to make a settlement with the 1935 and 1936 crops.

"On March 6, 1937, a motion was filed by the plaintiff to reopen the case, subsequent to the 1935 and 1936 crops.

"In the motion itself filed by the plaintiff it was admitted that the defendant had promised to make payment by means of the 1935 and 1936 crops; and although it was stated in said motion that the

defendant had failed to do so, yet the plaintiff himself testified as a witness that the 1935 and 1936 crops, respectively valued at $183.37 and $63.20, had been delivered to him.

"Subsequent to the reinstatement of the matter in 1937, the default of the defendant was entered and a judgment was obtained from the clerk. Upon the defendant being served with notice of said judgment, she moved to set aside the same and set up the agreement made and the delivery of the crops to the plaintiff.

"A stipulation was then filed whereby the plaintiff agreed to let the judgment by default be set aside and the defendant allowed to file an answer in May, 1937, in which she again alleged the deliveries of the coffee in 1935 and 1936 and of $23.00 in cash, totaling $471, in settlement of her mortgage indebtedness.

"Thereafter no further steps were taken by the plaintiff in the matter, and on April 10, 1939, the court made an order dismissing the suit unless the plaintiff moved within five days to leave the case pending, whereupon the plaintiff filed a motion to that effect. The case was then set for trial and tried.

"All the foregoing facts and delays, weighed together with the evidence, clearly show the truth of the allegation, contained in the answer, that the defendant delivered to the plaintiff the 1935 and 1936 coffee crops in order to avoid the prosecution of the suit and the sale of her properties on execution.

"Although the plaintiff stated that the coffee crop delivered in 1935 was worth $183.37 and that delivered in 1936 was worth $63.20, the amount of coffee which he admitted having received, even at a low price, showed a value nearer to $448 than to the sum of $246.57 fixed by the plaintiff.

"Moreover, if to the value of the coffee delivered we add the sum of $129.95 in plaintiff's hands as the balance of the defendant's current account, the resulting total would cover the amount of the loan, and this explains why the plaintiff delayed so long the further prosecution of the suit after receiving said crops.

"Regarding the interest, we fail to find any allegation in the complaint to the effect that no interest had been paid up to the filing of the suit. Nor does any liquidation appear regarding interest, although in the prayer of the complaint demand is made for the payment of accrued interest, but without specifying the amount due on that account.

"As the plaintiff had agreed to accept the 1935 and 1936 coffee crops in settlement of his credit, and as we have not been furnished

with definite information regarding the dates of the delivery of such coffee, and as it appears, moreover, that the plaintiff was keeping in his possession a sum of money belonging to the defendant as a balance in her open account, any pronouncement that we might make regarding interest would be arbitrary."

Based on the above conclusions and grounds the court rendered judgment "dismissing the complaint and sustaining the cross complaint, and ordering the plaintiff, within ten days after such judgment becomes final, to cancel the lien involved in the credit sued on, releasing the properties of the plaintiff (*sic*) from said lien," with costs but without including attorney's fees.

█ We have examined the transcript of the evidence and, in our judgment, the latter was properly weighed by the trial judge who gave a just decision.

The arguments contained in the lengthy brief of the appellant fail to convince us that the district court erred as claimed. The statements of the defendant's witnesses Gabriel de Hoyos, who delivered the coffee on instructions from the defendant, and defendant's son, José Marrero Cortés, are detailed and convincing. .

When asked whether he had had any intervention in the matter involved in the present action, José Marrero Cortés answered:

"While working in Santurce I received a letter from my mother . . . . . I called on Joaquín Rodríguez with whom I talked `. . . I mean the heirs of Rodríguez, their establishment . . . When I called on Joaquín Rodríguez, suit had already been brought against my mother, and I knew why, that it was a matter of money that had to be paid to him, and he said to me: I want to talk with you, because your mother is a little in arrears due to the hurricanes in '34 and in 1932, which had ruined them, and I told Doña María to have you come and talk matters over with me; and I said: All right, what do you want?; and he said to me: Pepito, I want Doña María to deliver to me the 1935 crop; and I said to him: Joaquín, we will be very much pleased to deliver it, because we want to settle this account as soon as possible.

"Judge: What account were you, are you referring to? To the mortgage constituted by my mother on the property, and it was so agreed, and I went back to my job in Santurce, and shortly afterward I was surprised to hear that my mother had been sued again by him, all this because a gentleman had failed to keep his word to another gentleman; and matters stood like that.

"  *       *       *       ●       ●       *       *

"Judge: What was it you agreed upon?—We agreed to deliver the 1935 crop and to come to court and have the complaint withdrawn, and I thought this had been done but it was not done.

"Q. Was the crop delivered? It was, the whole 1935 crop, and no more (coffee) was delivered because the trees did not yield more.

"Q. How much coffee was delivered by you from that crop? Thirty-two and a half or thirty-three hundredweight.

"Q. I mean the 1935 crop. Yes, sir; because it was then that I came and made the verbal agreement with Joaquín Rodríguez.

"  *       *       *       *       ♯       *       *

"Q. Besides the thirty-two hundredweight delivered in 1935, do you know whether in 1936 something was paid on account? In 1936, $122 was paid in cash on account and eleven and a half hundredweight of coffee were delivered.

"  *       *       *       *       *       *       *

"Q. Was the account paid in full by your mother? Yes, sir.

"Q. Does she owe anything on account of that deed? Absolutely nothing."

In examining this case, after a momentary confusion involving two different accounts with two distinct entities and caused by the statements of the plaintiff, there is gradually formed in the mind of the judge the conviction that the case is really one of a settled current account with a single entity.

Perhaps a settlement of the exact amount involved does not appear from the evidence regarding the delivery of the fruits, but in view of all the attendant circumstances which were set out by the trial judge in his opinion, the conclusion reached by him is unavoidable, and it can be asserted on appeal that his decision is supported by the evidence and is neither contrary thereto nor to the law. *De minimis non curat lex.* 18 C. J. 481.

■ Regarding the imposition of costs, suffice it to say that this was the most favorable pronouncement to the plaintiff that the court could make after dismissing the complaint, in accordance with the special law on the matter. There was no error.

For the reasons stated the appeal must be denied and the judgment appealed from affirmed.

Mr. Justice Travieso did not participate herein.